JULIUS JONSON'S SONS v. BUELLESBACH et al.

(Supreme Court, Appellate Term. November 30, 1909.)

1. BILLS AND NOTES (§ 537*)—QUESTIONS FOR JURY.

The defense of the maker of the note sued on being that it was given as security, and it appearing it was given as part payment, verdict was properly directed against him.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 537.*]

2. SALES (§ 418*)—BREACH OF CONTRACT—DAMAGES.

Defendant having, to plaintiff's knowledge, when ordering iron bases and columns of plaintiff, a contract to erect, by a certain time, the iron work of a building, in which such bases and columns were to be used, and having, by and as a natural consequence of plaintiff's negligent delay in furnishing such material, lost and been deprived of the benefit of the contract, may recover the amount of the loss.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1196–1198; Dec. Dig. § 418.*]

3. SALES (§ 413*)—PLEADING.

Defendant having pleaded that, by plaintiff's negligent delay in furnishing iron bases and columns ordered of it, he had lost, not a contract to erect all the iron work of a building, but a contract to erect such bases and columns therein, may recover only the damages for loss of the smaller contract, included in and approved by the larger contract.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 413.*]

4. SALES (§ 418*)—BREACH OF CONTRACT.

The damages from loss, through plaintiff's negligent delay to furnish iron bases and columns ordered of it by defendant, of the contract to erect them in a building, do not include a proportionate part of the anticipated profits on plaintiff's contract to erect all the iron work in the build-

ing, it not appearing that the payments or the profits under the entire contract, including the bases and columns, could be apportioned, nor do they include the loss of labor expended under the contract, it not appearing they were performed on the smaller contract; but they do include the amount paid plaintiff for the bases and columns, this being lost to defendant by reason of his inability to finish the contract to erect them.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

5. APPEAL AND ERROR (§ 209*)—OBJECTIONS BY APPELLEE.

The point raised by plaintiff, on defendant's appeal, that defendant's loss of a building contract was not shown to have been caused by plaintiff's delay in furnishing materials, cannot avail, there having been some, though not entirely satisfactory, testimony to that effect; plaintiff's motion to dismiss the counterclaim being, not for failure of proof, which perhaps could have been supplied, but because it was not properly pleaded, and the question having been submitted to the jury, without objection, and found in defendant's favor.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1290–1300, 1302½, 1303; Dec. Dig. § 209.*]

Appeal from City Court of New York, Trial Term.

Action by Julius Jonson's Sons against Joseph Buellesbach, doing business under the firm name and style of Bronx Iron Works, and another. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant Caspar Buellesbach appeals; and from the same judgment, defendant Joseph Buellesbach appeals. Affirmed in part, reversed in part, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and SEABURY and LEHMAN, JJ.

Bennett E. Siegelstein and Albert I. Sire, for appellant Caspar Buellesbach.

Robert A. McDuffie, for appellant Joseph Buellesbach.

Theodore Prince (Henry S. Dottenheim, of counsel), for respondent.

LEHMAN, J. The plaintiff sues the maker and the indorser of a promissory note for $750. Both defendants claim that the note was delivered only as security upon a contract for the purchase of iron bases and columns, and that the plaintiff never complied with the contract or furnished the iron. The indorser, Caspar Buellesbach, also counterclaimed against the plaintiff, alleging that the plaintiff neglected to make deliveries of the iron as required by the contract, and that—

"this defendant was under contract with the owner of said premises, No. 157–159 West Eighteenth street, Borough of Manhattan, to erect said iron columns and bases that had been ordered from the plaintiffs, and to complete said erection by the 15th day of November, 1906, and the plaintiffs were duly informed by this defendant of that fact, and that this defendant would suffer by any serious delay in the delivery of said iron toward said building, but wholly owing to the neglect of the plaintiffs, this defendant was unable to complete his contract for the construction of said iron upon said buildings, and thereby forfeited his contract with said owner and suffered damages by being charged with the same by reason of his breach of contract with the said owner, and by reason, also, of his loss of profits which would have accrued if he had not been prevented from fulfilling the said contract by reason of plaintiff's neglect, in all exceeding the sum of $2,000."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

At the trial it clearly appeared that the promissory note was given, not as security, but as part payment under the contract, and the trial justice properly directed a verdict against the maker for the amount of his note, with interest.

The appeal from the direction of this verdict appears to me to be without merit. It seems to me, however, that the trial justice was in error in his rulings in regard to the indorser's counterclaim. At the outset the plaintiff raised the question whether the defendant under his pleadings could show any special damages. The trial justice stated that in his opinion the special damage was not sufficiently pleaded, but that he would admit testimony subject to be stricken out thereafter. The defendant then presented evidence tending to show that before he made the contract with the plaintiff he told the plaintiff that he had or was about to obtain a contract for the erection of the structural work in a building in West Eighteenth street, and that the building had to be finished by November 15th; that he repeated this conversation when he signed the contract with the plaintiff; that the plaintiff unreasonably delayed his deliveries, and the defendant could not complete his contract by November 15th, and it was taken away from him on that day; that his contract was for the price of $7,500 and about $900, or 12 per cent. of the cost price, was figured as profit; and that the cost of the materials was figured at about $1,400, and about $450 was expended for labor. At the close of the trial the plaintiff moved to strike out all evidence in regard to the counterclaim, and for the direction of a verdict. The court then denied the motion except that it struck "out all the evidence received under the stipulation, so far as it can in any way relate to the counterclaim for loss of profit, or for loss of expenditure on the building contracted for," and further held that "the only question open in this case is whether or not there should be any allowance made against this plaintiff because of failure to perform the contract." The trial justice then charged the jury as follows:

"There is a conflict in the evidence with respect to the time when the detail for the second tier of columns was received. The defendant's testimony is to the effect that the detail was delivered in the latter part of September—I think the 27th or 28th, the witness stated. The plaintiff's testimony is that that detail was not delivered until the middle of October. It appears that the first delivery after the receipt of the detail for the second tier of beams was made by the plaintiff on the 14th of November, and at that time the contract with Mr. Buellesbach and the owners of the building had not been terminated; and it does appear that subsequently the contract was terminated, and Mr. Buellesbach's claim is that it was terminated because of the delay in furnishing him with the columns for the second tier.

"The question in this case which I ask you to determine is whether or not, after you fix the time when the detail was received by the plaintiff, if the plaintiff attempted to perform his contract and did within a reasonable time commence to make delivery of the second tier of columns, taking into consideration the time when the detail was received, the character of the work to be done, and taking all the evidence with respect to the amount of time necessary to make and deliver the goods called for by that detail, and then to say whether or not the plaintiff did within a reasonable time after the receipt thereof commence to make deliveries. If he did, he did all that he was called upon to do, and there can be no allowance to the defendant.

"If, on the other hand, there was a delay beyond a reasonable time for the delivery of these columns, and by reason of that delay this contract was lost to the defendant, then all that the plaintiff should have in this case would be

the sum of money which would represent actually the amount of material he delivered under this contract."

The jury brought in a verdict for the plaintiff only for the amount of iron delivered, and therefore, under the justice's charge, they must have found that the plaintiff's delay was unreasonable, and not caused by the defendant's failure to furnish the detail, and that by reason of the plaintiff's delay the defendant lost his contract with the owner. In other words, if this judgment is affirmed, the defendant is not only deprived of his profits under his contract, but he is obliged to pay this plaintiff for goods furnished by it, even though these goods were of no benefit to the defendant, solely because of the plaintiff's negligence.

If the trial justice considered this a case where the defendant could obtain only general damages, then the question whether the defendant lost his contract with the owner was immaterial, and should not have been submitted to the jury. The defendant has neither claimed nor proven any general damages, and, if this were the theory of his counterclaim, there was no question to submit to the jury. The trial justice has, however, apparently found that it was conclusively shown that the defendant had a contract with the owner, and that this contract was in the contemplation of the parties when they made the contract which is the subject of the counterclaim. The jury have found that by reason of the plaintiff's negligence the defendant was deprived of the benefit of this contract. The loss which the defendant suffered thereby was, therefore, a natural consequence of the plaintiff's neglect, for which he is liable, and which the defendant has a right to show if it is properly pleaded. Boughton v. Petigny, 72 App. Div. 76, 73 N. Y. Supp. 139, 76 N. Y. Supp. 125, and cases there cited.

The defendant has pleaded, not the contract to erect the iron work for the building, but only a contract to erect the iron bases and columns ordered from the plaintiff. He should, therefore, not be allowed to show his loss arising from a failure to carry out the larger contract; but he must be allowed to show his entire loss arising from a failure to erect the iron bases and columns. This contract was a part of the larger contract, and, though the defendant's proof in this respect went beyond the pleadings, it did prove all the allegations of the pleadings. I do not think that such loss includes either the $900 of anticipated profits on the whole contract or a proportionate amount thereof, because it does not appear that either the payments or the profits under the contract could be apportioned. Nor do I believe that the $450 loss of labor under the contract can be allowed because it does not sufficiently appear that the labor was performed upon the smaller contract; but the defendant should be permitted to recover the entire amount paid to the plaintiff under his contract for materials delivered and undelivered by the plaintiff, because this amount he has certainly lost by reason of his inability to finish the contract with the owner, as pleaded in the counterclaim and as shown at the trial.

In reaching this conclusion, I have not overlooked the point raised by the plaintiff that the loss of the contract is not shown by the testimony to have been caused by the plaintiff's delay. The testimony on this point is not entirely satisfactory to me; but there is some testimony to that effect, and the motion to dismiss the counterclaim was

made, not for failure of proof, which possibly could have been supplied, but because it was not properly pleaded. Moreover, the trial justice submitted the question to the jury without objection, and the jury found on this question in the defendant's favor.

The judgment against Joseph Buellesbach should be affirmed, with costs, and the judgment against Caspar Buellesbach should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.